## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | | |
|---|---|---|
| CARL KOCH, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL ACTION NO. _____ |
| | ) | |
| VS. | ) | HON. _____ |
| | ) | |
| SOARING EAGLE CASINO & RESORT., | ) | |
| INTERNATIONAL SERIES OF | ) | |
| CHAMPIONS, AMSOIL INC., & CHRYSLER | ) | |
| GROUP, L.L.C., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| _____) | | |

## COMPLAINT

PLAINTFF, CARL KOCH, by and through his attorneys, CARLA D. AIKENS, P.C.,

submits the following Complaint against DEFENDANT SOARING EAGLE CASINO AND

RESORT ("Defendant Casino"), DEFENDANT INTERNATIONAL SERIES OF CHAMPIONS

("Defendant ISOC"), DEFENDANT AMSOIL INC. ("Defendant Amsoil"), and DEFENDANT

CHRYSLER GROUP, L.L.C. ("Defendant Dodge") (collectively "Defendants").

## JURY DEMAND

COMES NOW PLAINTIFF, CARL KOCH, and hereby makes his demand for trial by

jury.

## JURISDICTION

1.      At all times relevant to this action Mr. Koch was a resident of Midland County in the

State of Michigan.

2.      Defendant Casino is a tribal profit corporation, operating at 6800 Soaring Eagle Blvd,

Mt Pleasant, MI 48858.

1

3.      Defendant ISOC is a snowmobiling racing organization, headquarter in Albertville, Minnesota.

4.      Defendant AMSOIL is a domestic profit corporation headquartered in Superior, Wisconsin.

5.      Defendant Chrysler Group, L.L.C., is a domestic profit corporation headquartered in Auburn Hills, Michigan.

6.      All relevant actions giving rise to this complaint took place in Isabella County in the State of Michigan.

7.      This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 12188(b)(1)(B) and (b)(2) and 28 U.S.C. §§ 1331 and 1345. The Court may grant declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

9.      All actions giving rise to this complaint took place in Midland County or Isabella county in the State of Michigan.

10.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## **VENUE**

11.     Venue is proper in the Eastern District of Michigan because all unlawful actions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

12.     In early 2017, Plaintiff purchased two tickets to attend a two-day outdoor spectator event entitled, Amsoil Championship Snocross Soaring Eagle's Ram Trucks National ("the event").

13.     The event was marketed as a family-friendly professional snowmobile race and extravaganza.

14.     Defendants were the main organizers, sponsors, promoters, and operators of the event.

15.     The event was held on February 24 and February 25 of 2017.

16.     The event was being hosted at Soaring Eagle Resort and Casino, located at 6900 Blvd, Mt Pleasant, MI 48858.

17.     Defendant ISOC, on its website, claims to be the "premier snowmobiling racing organization in the world…"[1]

18.     Further on Defendant ISOC's website, it claims to be responsible for "providing safe, fun, family entertainment for race attendees…expanding the fan and sponsor base."[2]

19.     Upon information and belief, Defendant Amsoil assisted the other Defendants in the event's organization, sponsorship, promotion, and operation.

20.     Upon information and belief, Defendant Dodge assisted the other Defendants in the event's organization, sponsorship, promotion, and operation.

21.     Plaintiff spent $100 for what Defendant Casino had advertised to be the biggest event of the year, providing exclusive coverage for a nationally televised event.

22.     Plaintiff purchased two tickets for both days of the event, totaling four total tickets.

---

[1]     Exhibit A: Defendant ISOC's Mission Statement.
[2]     *Id.*

23.     Plaintiff purchased these tickets in reliance on the fact that the pamphlet and brochure clearly stated that there would be bleachers.[3]

24.     Plaintiff has been suffering from severe back pain, nerve damage, and a compressed disc for over ten years.

25.     Plaintiffs' injuries have rendered him disabled within the meaning of the ADA, as amended, 42 U.S.C. § 12102, because he has an impairment that substantially impairs the major life activity of walking.

26.     The injuries are so pervasive that Plaintiff is dependent on the use of a cane at all times, is still dependent on pain medications three times per day, and can even require a nerve block to treat his condition.

27.     Plaintiff's disability makes it difficult for him to walk around or be on his feet for extended periods of time.

28.     This issues stemming from his disability are substantially exasperated in hilly, uneven terrain.

29.     Plaintiff, while always concerned about his disability and limited mobility, did not think it would be an issue because the event was advertised as having a shuttle and bleachers.[4]

30.     On February 24, 2017, Plaintiff arrived at Soaring Eagle Casino and Resort to attend the two-day, outdoor spectator event.

31.     Upon arrival at the event, Plaintiff was informed the event was being held behind the casino.

32.     Plaintiff, after explaining his disability and his requirements, asked the security guard for help to get to the back of the casino to where the race was being held.

---

[3]     Exhibit B: Map of Premise with Plaintiff Illustration
[4]     *Id.*

33.    Plaintiff was then told about, and subsequently used, the shuttle to get to the event.

34.    However, the drop-off location of the shuttle required Plaintiff to trek about four blocks through muddy, uneven terrain to get to the event.

35.    Moreover, because Defendants had recently set the event up, the grounds were especially weathered and difficult to navigate in Michigan winter weather.

36.    Plaintiff, after again explaining his disability and his requirements, requested that the shuttle drop him off in an empty parking lot that was much closer to the event.

37.    However, Plaintiff was told that that particular parking lot was reserved for the performers of the race only.

38.    Plaintiff pleaded with the employee, again explaining his disability and the severe and pervasive pain that he would be forced to endure if they required him to forced to walk to the event's bleachers.

39.    As a result, the employee operating the shuttle contacted his supervisor to inquire into the possibility of dropping Plaintiff off in the vacant parking lot.

40.    However, the supervisor said, "that is as far as we can go, and [Plaintiff] will have to walk."

41.    Plaintiff, one last time, pleaded to be dropped off at the closer, empty parking lot, explaining the seriousness of his disability, and advising that they were required to reasonably accommodate his disability.

42.    In response, the supervisor responded to Plaintiff, "we make our own rules since we are an Indian reservation."

43.    As a result, Plaintiff was forced to walk a muddy, slippery route, located on the decline of a hill, to reach where the bleachers were supposed to be positioned.

44.     Moreover, along this route, there were neither handicap signs nor any place to sit along the pathway.

45.     This path was inaccessible to a wheelchair and made Plaintiff's cane semi-inoperable.

46.     As Plaintiff got closer to the event, it became apparent that there were not any bleachers nor any seating areas, contrary to what was indicated on the event flyers.

47.     If Plaintiff needed to sit to enjoy the 2-day long event, he would have had to sit in the mud.

48.     Plaintiff was in excruciating pain after the trek and attempted to find a restroom.

49.     However, the event did not have a single handicap accessible restroom, but instead only outhouses.

50.     Plaintiff, in desperate need to find a place to rest, luckily found a wooden barrel on which to lean.

51.     However, within moments, a paramedic approached Plaintiff and told him he was not permitted to lean.

52.     For the fifth time, Plaintiff explained his disability and requirements to the event's personnel.

53.     This time, perhaps out of compassion for Plaintiff's obvious physical need, the paramedic allowed Plaintiff to lean on the wooden barrel.

54.     Plaintiff explained in further detail his experience with the execution and operation of the event.

55.     In response, the paramedic remarked that the reservation "makes dollars, not sense."

56.     Plaintiff knew he could not stay; however, he was too weak to make the long trek back to the shuttle pick-up area, so he was forced to do nothing but lean against the barrel for thirty to forty-five minutes in attempts to regain his strength to leave.

57.     After the necessary break, Plaintiff struggled through the inclined, slippery, muddy trek back to the shuttle pick-up area.

58.     Again, on the way back to the shuttle pick-up area, there were neither handicap signs nor any places to sit along the pathway.

59.     Plaintiff's condition and pain were so bad that he could not attend the event the following day, even though he had already purchased tickets.

60.     In fact, Plaintiff's condition was so bad that he required additional medical treatment and was unable to leave his bed for weeks subsequent to the incident.

61.     Even if he had been able to attend the second day of the event, the accommodations at the event would not have allowed him to attend.

62.     Defendants' set-up, operation, and execution of the event essentially barred access to people with disabilities that affect their ability to walk or stand.

63.     Defendants failed to consider or accommodate the disabled individuals who might attend the event.

64.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT I – VIOLATIONS OF TITLE III OF THE ADA AS TO ALL DEFENDANTS

65.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

66.     The situs of the event, as constructed jointly by Defendants, constitutes a public accommodation as defined in, 42 U.S.C. § 12181(7)(C), and its implementing regulation, 28 C.F.R. § 36.104.  In part, the ADA requires public accommodations to remove barriers

to access for persons with disabilities where it is readily achievable for them to do so, 42 U.S.C. § 12182(b)(2)(A)(iv) and 28 C.F.R. § 36.304; and to make reasonable modifications to its policies and practices as necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to persons with disabilities, as long as doing so does not fundamentally alter the nature of its goods, services, facilities, privileges, advantages, or accommodations, 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302.

67.    The ADA prohibits a public accommodation from discriminating against an individual on the basis of disability in the full and equal enjoyment of its goods, facilities, privileges, advantages, accommodations, and services.  42 U.S.C. § § 12181(7)(E), 12182(a); 28 C.F.R. § 36.201(a).

68.    Plaintiff is an "individual with a disability" within the meaning of 42 U.S.C. § 12102.

69.    Defendants, their employees and agents violated the ADA and its implementing regulations by failing to provide Plaintiff with reasonable transportation, seating, restrooms, or signage at its event.

70.    Defendants' employees and agents were authorized to act for Defendants when they committed the ADA violations alleged herein and acted within the scope of their employment or duties.

71.    Defendants, their employees and agents prevented Plaintiff from enjoying the full and equal accommodations, advantages, facilities, and privileges offered by Defendants.

72.    In doing the acts and omissions alleged herein, Defendants, their employees and agents knew or should have known that its conduct was directed to persons with disabilities.

73.     Pursuant to 42 U.S.C. § 12133, and the remedies, procedures, and rights set forth in 29 U.S.C. § 794a incorporated therein, Plaintiff prays for judgment as set forth below.

74.     Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT II – VIOLATION OF § 37.1102 OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT ("PWDCRA") AS TO ALL DEFENDANTS

75.     Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

76.     The situs of the event, as jointly constructed by Defendants, constituted a "[p]lace of public accommodation," pursuant to MCL 37.103.

77.     MCL 37.1102 states promises that, "full and equal utilization of public accommodation…without discrimination because of a disability is guaranteed by this act and is a civil right."

78.     Plaintiff has a "disability" within the meaning of MCL 37.1102(A) because one of more of his major life activities are substantially limited.

79.     Defendants violated MCL 37.1302 of the PWDCRA when they, "[d]en[ied] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability."

80.     Specifically, Defendants denied Plaintiff the ability to enjoy the event because he could was a person with a disability and had trouble with his mobility.

81.     For all practical purposes, Plaintiff, and most people with disabilities, were constructively barred from accessing the event with the logistical set-up Defendants implemented.

82.     The event was a public event.

83.     Defendants, through their employees, were put on notice of Plaintiff's disability, yet

failed to make any accommodation or attempt to help.

84.     Pursuant to the remedies, procedures, and rights set forth in MCL 37.1606, Plaintiff prays

        for judgment as set forth below.

85.     Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT III – NEGLIGENCE AS TO ALL DEFENDANTS

86.     Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

87.     Defendants owed a duty to Plaintiff to exercise reasonable care in the maintenance,

        preparation, and execution of the event and to keep the event in a condition which

        prevented it injuring the Plaintiff.

88.     Defendants negligently breached the duty owed to Plaintiff by failing to coordinate the

        logistics of their event and failing to set up necessary and promised infrastructure at the

        event so that disabled people could attend the event.

89.     Defendants knew or should have known that the event was not properly maintained nor

        set up so that disabled people, specifically people whose disability affects their ability to

        walk, could access the event in a safe manner.

90.     Defendants negligently breached the duty owed to Plaintiff by failing to put in place the

        proper infrastructure and accommodations for disabled people.

91.     Defendants' negligent breaches of the duty owed to Plaintiff caused him to suffer injuries

        and damages, as identified herein.

92.     Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT III -BREACH OF CONTRACT AS TO ALL DEFENDANTS

93.     Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

94.     In early February 2017, in exchange for valuable consideration, Plaintiff purchased four

tickets to the event.

95.     Plaintiff relied on Defendants to fulfil their statutory duty and provide reasonable accommodations for disabled persons to access the event.

96.     Moreover, Plaintiff relied on Defendants to provide the bleacher seating that was advertised.

97.     Plaintiff completed his contractual obligations by providing money to Defendants to attend their event.

98.     Defendants have breached their contract/agreement by failing and/or refusing to provide Plaintiff with access to the event because of his disability

99.     Plaintiff has been damaged by the Defendants' breach in an amount to be proven at trial.

100.    Plaintiff requests relief as described in the Prayer for Relief below.

## RELIEF REQUESTED

PLAINTIFF, CARL KOCH, RESPECTFULLY REQUESTS that this Court enter judgment against Defendants as follows:

1.  Compensatory damages in whatever amount to which Mr. Koch is entitled;

2.  Declaratory relief forcing Defendants to make all of their current and future events handicap accessible;

3.  Exemplary damages in whatever amount to which Mr. Koch is entitled;

4.  An award of interest, costs, and reasonable attorney fees; and

5.  An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  May 8, 2018                          Respectfully Submitted,

                                             /s/ Connor B. Gallagher_____
                                             Carla D Aikens (P69530)
                                             Connor B. Gallagher (P82104)
                                             CARLA D. AIKENS, P.C.
                                             *Attorneys for Plaintiff*
                                             615 Griswold Ste. 709
                                             Detroit, MI 48226
                                             connor@aikenslawfirm.com